[S. F. No. 3855.   In Bank.—December 4, 1907.]

## LAUREL HILL CEMETERY, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

MUNICIPAL CORPORATIONS — CONSTITUTIONAL LAW — POLICE POWERS.— Under the charter of the city and county of San Francisco, read in connection with article XI, section 11, of the state constitution, the supervisors have power to pass ordinances placing such restrictions upon the use of any property or the conduct of any business as may be necessary for the public health.

ID.—REASONABLENESS OF ORDINANCE—LEGISLATIVE DISCRETION—REVIEW BY COURTS.—Such ordinances must bear a rational relation to the object sought to be attained, and cannot be arbitrary or unreasonable or made a mere cloak for the arbitrary interference with a suppression of a lawful business; and the determination of the supervisors as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts. The courts, however, will not interfere with the exercise of the legislative discretion unless it clearly appears that such discretion has been arbitrarily or unreasonably exercised.

ID.—INTERMENT OF THE DEAD—PROHIBITION OF IN CITY LIMITS.—The interment of the bodies of dead persons, being likely to prove a danger to the surrounding population, may be prohibited by a municipality, but cannot be prohibited in such places therein where no possible danger to human life or health could result.

ID.—LIMITATIONS ON RIGHT TO PROHIBIT INTERMENTS.—The right to prohibit interments in a given territory rests upon the conditions existing in that territory. Where a cemetery in which it is proposed to make interments is located in a thickly settled community, further interments there may be prohibited, because the burial of dead bodies in close proximity to the habitations of the living has a

tendency to endanger the health of large numbers of persons. Where, however, the place in which it is proposed to bury the dead is remote from human habitations, or is close to but few dwellings, the absolute prohibition of interments is an unreasonable restriction of a lawful business, not fairly justified or required for the preservation of the public health, and will not be sustained by the courts.

ID.—UNOCCUPIED LANDS.—As a general rule interments in a city may be prohibited, but if cities include within their limits extensive tracts of land which are not actually occupied by dwellings and are not likely to be so for many years to come, it cannot be held that interments anywhere within the corporate limits may be prohibited merely because the territory involved is all included within the boundaries of the city.

ID.—CEMETERIES IN POPULATED DISTRICTS.—Where the effect of an ordinance of the city and county of San Francisco is merely to prevent further interments in cemeteries situated within densely populated portions of the municipality, it will not be held unreasonable as to such a cemetery solely because there are, within the limits of the city several large tracts of land far removed from human habitation.

ID.—NUISANCES—EXTENT OF POLICE POWER.—The police power granted by the constitution to municipalities is not restricted to the suppression of nuisances. It includes the regulation of the conduct of business or the use of property, to the end that the public health or morals may not be impaired or endangered. Consequently, whenever a thing or act is of such a nature that it may become a nuisance, or may be injurious to the public health if not suppressed or regulated, the legislative body may make and enforce ordinances to regulate or prohibit it, although it may never have been offensive or injurious in the past.

ID.—LEGISLATIVE POLICY.—JUDICIAL NOTICE OF DANGER TO HEALTH.— Whether the danger to be apprehended from the interment of dead bodies in thickly settled parts of a city is to be best averted by a prohibition of further burials is a question of policy to be decided by the supervisors, and with their determination the courts will not interfere. The courts will take judicial notice of the fact that cemeteries so situated are likely to be detrimental to the public health.

ID.—ESTOPPEL OF CITY—ACQUIESCENCE IN CEMETERY.—The city and county of San Francisco is not estopped from prohibiting the interment of dead bodies within a cemetery situated in a thickly settled portion of the municipality by the fact that many years previously, when the site of the cemetery was far from human habitations, it had made a grant of the land for cemetery purposes and had subsequently acquiesced in its use for such purposes.

ID.—POLICE POWER CANNOT BE CONTRACTED AWAY.—The future exercise by the legislative branch of a municipality of its police power cannot be bargained or contracted away.

CLII Cal.—30

ID.—IMPAIRMENT OF CONTRACT—DUE PROCESS OF LAW.—The ordinance of the city and county of San Francisco, enacted March 26, 1900, prohibiting the interment of dead bodies within the city limits, and giving a period of eighteen months to those affected by it to adapt themselves to its requirements, does not operate to impair the obligation of any contract or to take property without due process of law, in so far as it affects a corporation organized under the act of April 18, 1859, and which in 1854 had acquired land outside of the city limits for cemetery purposes that at the date of the ordinance was within the city limits and in a densely populated part thereof.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

Lloyd & Wood, and Haven & Haven, for Appellant.

Property rights can be injured or destroyed by the exercise of the police power only when such exercise is necessary and reasonable, with reference to the particular business and property, and under the particular circumstances, in whose aid the jurisdiction of a court of equity is invoked. (*Chicago Ry. Co. v. Minnesota*, 134 U. S. 418, 10 Sup. Ct. 462, 702; *Covington Turnpike Co. v. Sanford*, 164 U. S. 578, 17 Sup. Ct. 198; *Lawton v. Steele*, 152 U. S. 133, 14 Sup. Ct. 499; *Holden v. Hardy*, 169 U. S. 366, 18 Sup. Ct. 383; *Dobbins v. Los Angeles*, 195 U. S. 223, 25 Sup. Ct. 18; *City of Austin v. Cemetery Association*, 87 Texas, 330, 47 Am. St. Rep. 114, 28 S. W. 528; *In re Smith*, 143 Cal. 368, 77 Pac. 180.) Courts cannot know judicially that the continuance of interments in the cemetery of the plaintiff is now or ever will be dangerous to life or detrimental to the public health. (*County of Los Angeles v. Hollywood Cemetery Assn.*, 124 Cal. 344, 71 Am. St. Rep. 75, 57 Pac. 153; *St. Louis Gas Light Co. v. American Fire Ins. Co.*, 33 Mo. App. 348, 367; *City of Santa Cruz v. Enright*, 95 Cal. 115, 30 Pac. 197; *Patterson v. McCausland*, 3 Bland. 69.) The municipality is estopped. (2 Hermann on Estoppel, secs. 1223-1226; *Fresno y. Fresno C. and I Co.*, 98 Cal. 179, 32 Pac. 943; *Chicago & N. W. R. R. Co. v. Elgin*, 91 Ill. 251; *City of Los Angeles v. Cohn*, 101 Cal. 373, 35 Pac. 1002; *City of Eureka v. McKay*, 123 Cal. 673, 56 Pac. 439;

*Sacramento County* v. *Southern Pacific Co.,* 127 Cal. 217, 59 Pac. 568, 825.)   The ordinance is void because unreasonable. (*Wygant* v. *McLauchlan,* 39 Or. 429, 87 Am .St. Rep. 673, 64 Pac. 867; *Austin* v. *Austin Cemetery,* 87 Tex. 337, 47 Am. St. Rep. 114, 28 S. W. 528; *Austin* v. *Murray,* 16 Pick. 121; *Lake View* v. *Letz,* 44 Ill. 81.)   The ordinance deprives the plaintiff and its lot-owners of their property without due process of law.   (*Lakeview* v. *Rose Hill Cemetery Co.,* 70 Ill. 191, 22 Am. Rep. 71; Cooley's Const. Lim., sec. 203; *Clark* v. *Mayor etc. of Syracuse,* 13 Barb. 32; *Hume* v. *Laurel Hill Cemetery,* 142 Fed. 552.)

William G. Burke, City Attorney, John T. Williams, Assistant City Attorney, John S. Partridge, Percy V. Long, City Attorney, Wm. M. Sims, and Garret W. McEnerney, for Respondents.

SLOSS, J.—This action was brought to restrain the city and county of San Francisco and its officers from enforcing an ordinance prohibiting the interment of dead bodies within said city and county, and to obtain a decree declaring the ordinance void.   The defendants answered and moved for judgment on the pleadings.   Their motion was granted and the plaintiff appeals from the judgment entered upon the order so made.

This court has already, in *Odd Fellows' Cemetery Association* v. *City and County of San Francisco,* 140 Cal. 226, [73 Pac. 987], decided that the adoption of the ordinance in question was a valid exercise of the legislative power of the city and county.

It is urged, however, by the appellant that the case here presented differs in some respects from that considered by the court in its former decision.   Furthermore, great reliance is placed upon two decisions—one of the supreme court of the United States, and the other of the United States circuit court for the ninth circuit, northern district of California—both rendered since the filing of the opinion in the Odd Fellows' case, and both, it is claimed, inconsistent with the views there expressed by this court.

The complaint in the case at bar is very voluminous, but its essential allegations do not, we think, differ materially

from those set forth by the complainants in the earlier case. Briefly stated, it alleges the incorporation of plaintiff in 1867 as a cemetery association pursuant to the provisions of an act approved April 18, 1859, and entitled "An Act authorizing the incorporation of rural cemetery associations." (Stats. 1859, p. 281.) It is averred that in 1853 one Nathaniel Gray, and others associated with him were the owners of a tract of land then lying beyond the corporate limits of the city of San Francisco, containing about one hundred and sixty acres, which said Gray and his associates determined to appropriate and devote to the purposes of a rural cemetery. They prepared the land for such purposes, clearing it of brush and laying out roads and doing other work. On the thirtieth day of May, 1854, said lands were publicly dedicated to the purposes aforesaid by the name of the Lone Mountain Cemetery, the dedication being made the occasion of a "solemn and impressive ceremony," in which the mayor of the city participated. The Lone Mountain Cemetery continued to be occupied by said association as a cemetery. In May, 1868, Gray and his associates conveyed to the plaintiff so much of the tract as had been appropriated for the purposes of a cemetery. The plaintiff entered into possession of the land and has since continuously carried on and conducted there the business of a cemetery, under the name of Laurel Hill Cemetery. On June 23, 1871, the mayor of the city and county made a grant to plaintiff of said tract of land, in consideration of the sum of $24,139.79, paid by plaintiff to the treasurer of said city and county. Since the establishment of the cemetery and its dedication in the year 1854, plaintiff and its predecessors have sold and conveyed forty thousand lots or plots, a large proportion of which have been used for the purposes of burial, but many of them are capable of receiving a number of interments in addition to those already made therein. Over two million dollars have been expended by the owners of said lots and plots, in preparing them for the burial of bodies and in the construction of monuments and tombs and the embellishment of their lots by landscape culture. The plaintiff association has also expended large sums of money in constructing roads, avenues and paths through said cemetery, in constructing a system of water works and erecting a lodge and walls. Of the area included

in said cemetery the plaintiff has about seven acres unsold and ready for sale.

At the time of the establishment of the said cemetery it was wholly outside the corporate limits of the then city of San Francisco, and was distant more than two miles in a direct line from the business part thereof, and at least one mile from the residence part thereof. No residence had then been built to the west of said cemetery, and the whole country between it and the Pacific Ocean was practically unoccupied. Plaintiff avers ''that at no time since the establishment of said cemetery has it or any part thereof been, nor has it or any part thereof, or will it or any part thereof, become injurious to health, indecent, or offensive to the senses, or an obstruction to the free use of property so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstruct the free passage or use in the customary manner of any public park, square, street, or highway; that the soil of said cemetery is sand, and the natural condition and character thereof is such that no dangerous or disease-breeding elements can be transmitted through the same from the decaying remains of bodies buried therein. That since the establishment of said cemetery many residences have been built in its neighborhood, and the same have been and are now occupied with families, and yet it has not been proven that the district embracing said cemetery and said residences was unhealthy and subject to epidemics, but, on the contrary, said district has always been, and is now regarded, as particularly healthy and free from the diseases which prevail in other parts of said city and county.'' There have never been any wells excavated in the neighborhood of said cemetery ''for the purpose of supplying water to any residences of families residing therein, or for any consumption of human beings.'' It is further alleged that there are within the corporate limits of the city and county of San Francisco several large tracts of land, some of which consist of barren sand hills and are entirely unoccupied, and some of which are used solely for farming purposes; that some of said tracts of land contain several hundred acres, and interments of dead bodies could be made on several of said tracts of land, and within the corporate limits of the city and county of San Francisco, which would be more than a mile distant from any human inhabitant or public thoroughfare.

The ordinance complained of was passed on the twenty-sixth day of March, 1900, and provides that after the first day of August, 1901, it shall be unlawful for any person, association, or corporation to bury, or inter, or cause to be interred or buried, the dead body of any person in any cemetery, graveyard, or other place within the city and county of San Francisco, exclusive of those portions thereof which belong to the United States, or are within its exclusive jurisdiction. The violation of the ordinance is made a misdemeanor.

This ordinance is assailed by plaintiff upon the grounds that it deprives plaintiff of its property without due process of law, and impairs the obligation of a contract; and that it is unreasonable in that it prohibits acts which are in no way dangerous to life, or detrimental to the public health. It is also claimed that the city and county is estopped by its acts and conduct to assert or exercise the right of making it unlawful to continue to bury the dead bodies of persons in the cemetery of the plaintiff.

The ordinance contains a recital that "the burial of the dead within the city and county of San Francisco is dangerous to life and detrimental to public health." It purports to be passed in pursuance of what is generally known as the "police power" of the state, and of that branch of the police power which has to do with the preservation and protection of the public health. Under the charter of the city and county, read in connection with the state constitution (art. XI, sec. 11), the supervisors have power to pass ordinances placing such restrictions upon the use of any property or the conduct of any business as may be necessary for the public health. (*Odd Fellows' Cemetery Association* v. *City and County of San Francisco,* 140 Cal. 226, [73 Pac. 987].) Such ordinances must, of course, bear a rational relation to the object sought to be attained. They may not be arbitrary or unreasonable. The exercise of the police power cannot be made a mere cloak for the arbitrary interference with or suppression of a lawful business. (*Holden* v. *Hardy,* 169 U. S. 366, [18 Sup. Ct. 383]; *In re Smith,* 143 Cal. 368, [77 Pac. 180].) "The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessarily restrictions upon lawful occupations. In other words, its determina-

tion as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts." (*Lawton* v. *Steele,* 152 U. S. 133, [14 Sup. Ct. 499].)

But while the action of a legislative body in assuming to exercise the police power is always subject to review by the courts, the question of the expediency or necessity of a proposed restriction is primarily for the legislature, and the courts will not interfere with the exercise of the legislative discretion unless it clearly appears that such discretion has been arbitrarily or unreasonably exercised. (*Ex parte Whitwell,* 98 Cal. 73, [35 Am. St. Rep. 152, 32 Pac. 870] ; *County of Plumas* v. *Wheeler,* 149 Cal. 758, [87 Pac. 909].)

There is ample authority defining the limits of the power of legislative bodies in restricting the right of interment of dead bodies. That the interment of such bodies in the midst of thickly populated districts is likely to prove a danger to the health of the surrounding population, and as such may properly be prohibited, seems to be settled by a number of well-considered cases, cited in the opinion in the Odd Fellows' Cemetery case. (*People* v. *Pratt,* 129 N. Y. 68, [29 N. E. 7] ; *Brick Presbyterian Church* v. *Mayor,* 5 Cow. (N. Y.) 538; *Coates* v. *Mayor,* 7 Cow. (N. Y.) 585; *Kinkaid's Appeal,* 66 Pa. St. 411, [5 Am. Rep. 377] ; *Sohier* v. *Trinity Church,* 109 Mass. 1; *City Council* v. *Wentworth St. Baptist Church,* 4 Strob. 309; *Humphries* v. *Front St. Methodist Church,* 109 N. C. 132, [13 S. E. 793].) On the other hand, it is equally well settled that the interment of the bodies of the dead is proper, indeed necessary, and that the legislature may not prohibit such interments in places where no possible danger to human life or health could result. Thus, it has been declared by this court that an ordinance prohibiting the establishment of a cemetery within the limits of the county of Los Angeles without the permission of the board of supervisors was unreasonable and void. (*Los Angeles* v. *Hollywood Cemetery Assn.,* 124 Cal. 344, [71 Am. St. Rep. 75, 57 Pac. 153].) This went on the ground, as was pointed out in the Odd Fellows' Cemetery case, that the county of Los Angeles "has within its limits many square miles of territory which are not only not thickly populated, but in which there are scarcely any inhabitants at all."

In the Odd Fellows' Cemetery case, some of the justices intimated that the line of demarkation is that separating cities from counties, i. e., that interments may be prohibited in cities but may not be prohibited in counties. This is perhaps too broad and general a statement of the rule. The right to prohibit interments in a given territory rests upon the conditions existing in that territory. Where a cemetery in which it is proposed to make interments is located in a thickly settled community, further interments there may be prohibited because the burial of dead bodies in close proximity to the habitations of the living has a tendency to endanger the health of large numbers of persons. Where, however, the place in which it is proposed to bury the dead is remote from human habitations, or is close to but few dwellings, the absolute prohibition of interments is an unreasonable restriction of a lawful business, not fairly justified or required for the preservation of the public health, and will not be sustained by the courts. Ordinarily, cities are thickly populated, whereas the portions of counties lying outside of cities are not. In view of this, it may be properly said as a general rule that interments in cities may be prohibited. It must be borne in mind, however, that the limits of many cities include large uninhabited areas; that oftentimes cities include extensive tracts of land which are not actually occupied by dwellings, and are not likely to be for many years to come. Where a city includes considerable tracts of this character it will not be said that interments anywhere within the corporate limits may be prohibited merely because the territory involved is all included within the boundaries of a city. Thus, in *Wygant* v. *McLauchlan*, 39 Or. 429, [87 Am. St. Rep. 673, 64 Pac. 867], an ordinance prohibiting burials within the city of Portland was held invalid, it appearing that there were within the city limits considerable tracts of land which were sparsely inhabited. This case is criticised to some extent by this court in *Odd Fellows' Cemetery Association* v. *City and County of San Francisco,* but whether or not it was rightly decided on the facts appearing, we do not question the correctness of the principle that such circumstances may be shown as would make it unreasonable, even in a city, to absolutely prohibit burial anywhere within the city limits. In *Lakeview* v. *Rose Hill Cemetery Company,* 70 Ill. 191, [22

Am. Rep. 71], an ordinance prohibiting further interments in the town of Lakeview was, by a divided court, held unreasonable and invalid. It there appeared that the town of Lakeview contained 8400 acres of land and but 1500 inhabitants and that, as is stated in the opinion of the court, the lands of the company owning the cemetery "are well selected and are situated at a proper distance from the populous part of the city, in a sparsely settled community, there being but few dwellings in the immediate vicinity." This case, therefore, is no authority for the proposition that a municipality may not properly prohibit further interments in populous parts of its territory, or anywhere within the municipality, if all of it be, or may soon be, thickly settled.

In the case at bar it is true that the complaint alleges that there are within the corporate limits of the city and county several large tracts of land, some of which contain several hundred acres, and that interment of dead bodies could be made on several of said tracts of land at points which would be more than a mile distant from any human inhabitant or public thoroughfare. If the ordinance did in effect prohibit the interment of dead bodies upon any such tracts of land, it may be that it would be to that extent unreasonable, or at least that this allegation would tender an issue which would require the trial court to take proof to determine whether or not under all the circumstances the ordinance was unreasonable. But at the time this ordinance was adopted and for many years theretofore, the Penal Code of this state contained a provision (sec. 297) making it a misdemeanor to bury or inter, or cause to be buried, any human remains in any place within the corporate limits of any city or town in this state, or within the corporate limits of the city and county of San Francisco, "except in a cemetery or place of burial now existing under the laws of this state and in which interments. have been made, or that is now or may hereafter be established or organized by the board of supervisors of the county or city and county in which such city or town or city and county is situate." By reason of the existence of this statute it was already, at the time of the passage of the ordinance in question, a misdemeanor to inter any dead body in any place within the city and county of San Francisco outside of the existing cemeteries, or those to be authorized by the super-

visors. There is no suggestion that the establishment of new cemeteries was contemplated. The ordinance, therefore, in effect merely prohibited the interment of bodies in existing cemeteries. It is not alleged that any such cemeteries did in fact exist upon any of the vacant tracts of land referred to in the complaint. Indeed, the only cemetery described by the plaintiff is its own, and that, as is shown by the allegations of the complaint itself, is situated in the midst of a thickly settled district. As is alleged, ''Many residences have been built in its neighborhood and the same have been and are now occupied with families.'' As no presumptions are to be indulged in support of the pleading, it may be assumed that all the cemeteries existing in San Francisco at the date of the passage of the ordinance were similarly situated. The effect of the prohibition, therefore, was merely to prevent further interments in cemeteries situated within densely populated portions of the municipality. That such prohibition is a reasonable exercise of the police power vested in the board of supervisors clearly appears from the authorities above cited.

It is, however, claimed that the ordinance is unreasonable in its operation upon plaintiff's cemetery, considered by itself, and this contention is based upon the allegations of the complaint to the effect that the soil of the cemetery is of such character that no disease-breeding elements can be transmitted through the same; that the district in which it is has not been proven to be unhealthy or subject to epidemics, and that the cemetery does not possess the characteristics necessary to constitute it a nuisance within the definition of the code. (Civ. Code, sec. 3479.) It is argued that no legislative body can by its mere assertion make that a nuisance which is not in fact a nuisance. This is undoubtedly true, but the ordinance in question does not proceed upon the basis that further interments are to be prohibited because the cemeteries in which such interments are sought to be made are in fact nuisances under the general law. The police power granted by the constitution is not restricted to the suppression of nuisances. It includes the regulation of the conduct of business, or the use of property, to the end that the public health or morals may not be impaired or endangered. As was said by this court in the Odd Fellows' Cemetery case, 140 Cal. 231, ''Whenever a thing or act is of such a nature that it may

become a nuisance, or may be injurious to the public health if not suppressed or regulated, the legislative body may, in the exercise of its police powers make and enforce ordinances to regulate or prohibit such act or thing, although it may never have been offensive or injurious in the past. . . . The exercise of this power is not limited to the regulation of such things as have already become nuisances or have been declared to be such by the judgment of a court.'' The question is whether in the exercise of a reasonable discretion the board may conclude that the thing prohibited is dangerous to the public health. The views already expressed make it clear that this decision may properly be reached with regard to the interment of dead bodies in thickly settled communities. Whether the danger to be apprehended from such interment is to be best averted by a prohibition of further burials, is a question of policy to be decided by the legislative body. The court is not to substitute its judgment for that of the board of supervisors. Any evidence that might be introduced tending to show that, as a matter of fact, a particular cemetery had not proven or might not prove detrimental to the public health, would not alter the fact, of which courts take judicial notice, that cemeteries situated as this one is are likely to cause such injury, and are therefore, as to further use, within the control of the legislative authority.

Much stress is laid by the appellant upon the facts that a grant of this land was made to it by the city and county of San Francisco for the purposes of a cemetery; and that the establishment and existence of the cemetery were known for many years to the city and county and acquiesced in by it. From these facts it is argued that the city is estopped to now prevent the further use of the premises for the purposes of interment of the dead. There is no force in this position. Even if the city and county had made an express contract granting to the plaintiff the right to make interments in this ground in perpetuity, such contract would have no force as against a future exercise by the legislative branch of the government of its police power. (*Brick Presbyterian Church* v. *Mayor,* 5 Cow. (N. Y.) 538.) This power cannot be bargained or contracted away, and all rights and property are held subject to it. (*Boston Beer Co.* v. *Massachusetts,* 97 U. S. 25; *Butchers' Union* v. *Crescent City Co.,* 111 U. S. 746, [4 Sup.

Ct. 652]; *New Orleans Gas Co.* v. *Louisiana Light etc. Co.*, 115 U. S. 650, [6 Sup. Ct. 252].)   The alleged estoppel relied on can have no greater force than would a contract such as the one supposed.   But in fact there is nothing upon which to base the claim of estoppel.   As appears from the complaint, this cemetery, at the time of its establishment, was outside the limits of the city of San Francisco, in a then unsettled district, more than a mile distant from the nearest residence section.   If, as is claimed, the city acquiesced in the establishment of this cemetery and in the expenditure of large sums of money in its improvement, such acquiescence was based upon the conditions as they then existed.   Since that time the city (or its successor, the city and county) has grown until it has surrounded the cemetery in question.   This change of conditions altered what was before a harmless and beneficial enterprise into one fraught with danger to the community. There is no ground for the claim that because the city in 1854 considered the location in question a proper one for a cemetery, it was bound to continue to so regard it half a century later, when the situation of the cemetery with relation to the city had entirely changed.

Except for this claim of estoppel, the case does not differ materially from that made by the plaintiffs in the Odd Fellows' Cemetery case.   The decision in that case, apart from what we have here said, sufficiently answers the contention of appellant that its incorporation under the act of 1859, and its purchase of the land in question, constituted a contract, which is violated by the ordinance in question.   Indeed, on all the questions raised in the earlier case, we should have rested our rulings upon a mere reference to the former decision, but for the fact that the plaintiff, as has been said, relies upon two decisions of federal courts as being in conflict with our views.   In *Hume* v. *Laurel Hill Cemetery*, 142 Fed. 552, the United States circuit court for the northern district of California did hold, upon a complaint not essentially different from that here presented, that the ordinance in question was void.   While we have the highest respect for the opinion of the learned judge who rendered this decision, we cannot, for the reasons above stated, concur in it.   It is claimed, further, that the decision of the supreme court of the United States in *Dobbins* v. *Los Angeles*, 195 U. S. 223, [25 Sup. Ct. 18], com-

pels the conclusion that the ordinance in question is void, as depriving the plaintiff of property without due process of law. In any case, we should feel strongly inclined to follow the decision of this high tribunal, and, in a case involving a claim of right under the constitution of the United States, we should, if that decision had been rendered in a parallel case, be bound to follow it. But we think the Dobbins case is very different from the one before us. There the city council of Los Angeles had, in August, 1901, adopted an ordinance making it unlawful to erect and maintain gas-works outside of a certain district. In September the plaintiff purchased lands and made a contract for the erection of gas-works upon territory which was not within the prohibited zone. After the work had been commenced, the city council, on November 25, 1901, passed a second ordinance so changing the boundaries of the territory within which the erection of gas-works was permitted, as to include the plaintiff's land within the prohibited territory. It was alleged that the second ordinance was adopted at the instigation of a corporation which was engaged in manufacturing gas and for the purpose of preserving a monopoly by said corporation, and that the territory which was added to the prohibited territory by the second ordinance was devoted almost exclusively to manufacturing enterprises. It was held that the ordinance was void upon the ground that the situation and conditions evidenced the exercise of the police power in such manner as to work a discrimination against the plaintiff, the court saying: "We think the allegations of the bill disclose such character of territory, such sudden and unexplained change of its limits after the plaintiff in error had purchased the property and gone forward with the erection of the works, as to bring it within that class of cases wherein the court may restrain the arbitrary and discriminatory exercise of the police power, which amounts to the taking of property without due process of law, and an impairment of property rights protected by the fourteenth amendment of the federal constitution." It appeared there that within four months after the city council had fixed the limits within which the business of manufacturing gas could be conducted, and after the plaintiff had, in reliance upon this action, purchased land within the permitted limits and gone to expense in pre-

paring to manufacture gas, the council had, without any apparent change of conditions requiring such action, altered the limits so as to make unlawful that which but shortly before they had, in effect, declared to be lawful. This the court characterized as a "sudden and unexplained change of limits," indicating an intent to discriminate against the plaintiff, and, following its settled rule, it held that the police power could not be made a pretext for such discrimination. But these considerations do not apply to the case at bar. Here there was no change that was either sudden or unexplained. By the ordinance itself a period of almost eighteen months was given to those affected by it to prepare for the change. The ordinance, passed in March, 1900, was not to be effective until August, 1901. Furthermore, ample cause for the change was shown. The land affected by it was, when originally dedicated as a cemetery, one mile from any habitation. At the time the ordinance was adopted it had become the center of a thickly populated residence district. These circumstances, which appear from the complaint itself, afford at once the justification for the exercise of the police power, and the refutation of the claim that the exercise of that power was a mere pretense for the spoliation of private rights. On the facts alleged it cannot be claimed that there was no reasonable justification for the action of the board, and there is no claim that the ordinance was passed for the purpose of discriminating against the plaintiff by imposing upon it any onerous burdens which were not imposed upon others similarly situated. We think the appellant has shown no reason why the ordinance in question was not a valid exercise of the legislative power of the city and county.

The judgment is affirmed.

Angellotti, J., Shaw, J., Lorigan, J., McFarland, J., and Henshaw, J., concurred.