[Civ. No. 8534. First Appellate District, Division One.—October 28, 1932.]

FRANK BISCAY, Appellant, v. CITY OF BURLINGAME et al., Respondents.

214

Fletcher A. Cutler for Appellant.

John F. Davis for Respondents.

LAMBERSON, J., *pro tem.*—This is an action to enjoin the City of Burlingame, which is a municipal corporation of the sixth class, and its officers, from enforcing as against the plaintiff and appellant, the provisions of a zoning ordinance of that city designated "Ordinance No. 227". By their answer the respondents seek to justify their threatened acts under authority of Ordinances No. 92 and No. 227 of the respondent municipal corporation.

On October 16, 1928, appellant made application to the City of Burlingame for a building permit covering the intended erection of a frame garage 32 by 35 feet in ground dimensions and 15 feet in height at its highest point, and on the same date was granted a building permit by the department of public works through its building inspector. The permit covered the erection of a "garage" and specified that all work done by virtue of the permit must conform to the plans and specifications filed with the building department and in accordance with the provisions of the ordinances of the City of Burlingame. The front line of the building was to be 15 feet from the property line. The garage was immediately erected upon a lot adjacent to the residence of appellant, who had, at the time of the issuance of the permit, a small garage in use in connection with his dwelling-house.

Whether the garage was to be a public or private garage was not specified in the application or permit, but the trial court allowed the introduction of testimony to the effect that the appellant was informed by the building inspector, city attorney and chief of police at the time the permit was granted, that no business could be conducted on the premises. In January, 1929, the appellant repaired three automobiles in the building and later rented it for a paint shop. The block immediately across the street from the property of appellant and west thereof, is entirely occupied by industrial plants, which are adjoined on the west by the main line and industrial spur tracks of the Southern Pacific Company. Immediately south of and across the street from the block in which appellant's property is located and which is largely vacant, are other industrial plants.

The trial court found that the building inspector issued a permit to plaintiff to erect a building to be used as a

private garage; that thereafter, in November, 1928, the appellant erected a building, equipped it with machinery, and ever since November 1, 1928, has transacted in said premises a public garage business. The complaint in this action was filed July 24, 1929.

Ordinance No. 227 was adopted by the city council of the City of Burlingame June 3, 1929. It constitutes a complete zoning ordinance by which the city is divided into four classes of use districts: Commercial, apartment, residential and unrestricted. The district in which appellant's garage is located was by the ordinance classed as residential. Among other things, the ordinance provides that any nonconforming uses existing at the time of the passage of the ordinance may be continued and any existing building designed, arranged, intended or devoted to a nonconforming use may be reconstructed or structurally altered and the nonconforming use therein changed, subject to certain specified conditions. It further provided that all ordinances and parts of ordinances inconsistent with Ordinance No. 227 shall be and are repealed.

In March, 1914, the city council of Burlingame passed Ordinance No. 84, by which it was declared that certain territory of the City of Burlingame, within which the official subdivision in which appellant's property was located was included, should be thereafter known as "Burlingame Meadows". In September, 1914, the city council adopted Ordinance No. 92, which declared that the district known as "Burlingame Meadows" to its full limits with the exception of a portion of three blocks, should be created a residence district, and that such district should be governed by such regulations as would prohibit the erection, building or placing within said district of any structure or building other than dwelling or home, hotel, flat or apartment house, with appurtenant buildings. It provided a penalty for the violation of its provisions, but defined nothing as unlawful.

In August, 1922, the city council passed Ordinance No. 150–A, amending Ordinance No. 92. It prohibited the carrying on, in the district described in Ordinance No. 92 as a residence district, of any business of any kind or nature, "except those of the known and accepted professions". Later, there was adopted in the City of Burlingame at an

initiative election, a zoning ordinance known as Ordinance No. 162, which was declared invalid in the case of *Hurst* v. *City of Burlingame*, 207 Cal. 134 [277 Pac. 308]. After the entry of the decision of the Supreme Court in that case, the city council passed in May, 1929, what has been termed by counsel an emergency ordinance, designated as Ordinance No. 226, which purported to fix certain territory in the City of Burlingame as residential territory and which ordinance declared that it was part of a comprehensive zoning plan of the City of Burlingame.

While the Zoning Act of 1917 (Stats. 1917, p. 1419), provides for the regulation of industries and business by the establishment of zones, and the courts have recognized the authority of municipalities, under the police power, to restrict certain classes of business to prescribed territories or districts for the protection of the public health, comfort, safety, morals or welfare (*Miller* v. *Board of Public Works*, 195 Cal. 477 [234 Pac. 381, 38 A. L. R. 1479]), such restrictions must be ordained by ordinance and be of a form designed to comprehend a reasonable regulation of industries and business in view of their relation to the residential portion of the community. In other words, such ordinance or regulation must be general, uniform and comprehensive. With the exception of Ordinance No. 162 which was declared void, and Ordinance No. 227, none of the ordinances of the City of Burlingame which we have mentioned were calculated to be either general or comprehensive. The earlier ordinances arbitrarily established a residential district without regard to business which might be necessary in that district. Ordinance No. 150–A sought to prohibit any business except "those of the known and accepted professions", a provision that was vague, inexact and altogether impossible of definition. It is not pretended that any of those ordinances were passed for the purpose of protecting the public health, comfort, safety or welfare, or were to be comprehended within a general scheme or plan designed for such purpose. Respondents therefore, even if we should disregard the repealing clause of Ordinance No. 227, which it is not possible for us to do, cannot rely upon those ordinances in justification of their attempts to prevent the appellant from using his garage for established business purposes.

The right to zone may be resorted to upon a proper invocation of the public police power, but such zoning must be reasonably necessary and reasonably related to the health, safety, morals or general welfare of the community. Of course, it goes without saying that such zoning must either expressly or impliedly be founded upon a finding by the board of trustees, or other governing body of a municipality, that such zoning is necessary to the general welfare of the community. (*In re White*, 195 Cal. 516 [234 Pac. 396].) There is no indication found in the earlier ordinances of the City of Burlingame, upon which respondents are relying, that the city council, in passing those ordinances, had in mind anything other than an arbitrary setting aside of a very large part of the city for residential purposes without regard to the commercial and industrial needs of the community. Courts are required, in considering the validity of zoning ordinances, to determine in addition to the need thereof, whether or not they are arbitrary and discriminatory in their conception and application, and whether they have any reasonable tendency to promote the public morals, health, safety, or general welfare and prosperity of the community. (*Miller* v. *Board of Public Works, supra.*)

The ordinance or authority under which a building permit was issued upon the application of appellant, and the authority asserted by the various officers of the respondent municipality to orally limit or modify the terms of the permit, do not appear from the record before us. ■ In the absence of a showing to the contrary, we must assume that the permit was legally issued and that the appellant acted under lawful authority in erecting the structure described in the permit. A sharp distinction must be drawn between the right to erect a building according to certain prescribed structural standards or to construct a particular type of building under the customary ordinance obtaining in many municipalities and contemplated by subdivision 16a of section 862 of the Municipal Corporation Bill, and the right to construct a building designed for the conduct of a particular business therein or to carry on such business. In the first class, the governing factors may be the fire hazards involved, the height, the strength of the materials and type of construction used, or the sufficiency of means

of ingress and egress in the instance of buildings intended for the occupancy of large numbers of individuals; in short, those matters which essentially have to do with the safety of persons and property. In the second class, the chief consideration is the development of the community as a whole. From the form of application made by the appellant and the form of permit issued, both of which referred to the plans and specifications, we must conclude that the permit was issued under the provisions of a building ordinance not disclosed by the record, and that the officers of the city were more interested in the type of building from a structural standpoint than they were in its relation to the surrounding district. The construction of the garage was lawful and none of the ordinances of the City of Burlingame prior to Ordinance No. 227 operated to make its use for business or trade purposes unlawful.

■ Assuming, only for the purposes of this opinion, that the finding of the court, that appellant has ever since the first day of November, 1928, transacted on the premises a public garage business, is supported by the evidence, we are of the opinion that respondents are by reason of the provisions of Ordinance No. 227, relating to the continuance of nonconforming uses existing at the time of its passage, foreclosed from taking any action against the appellant, the object of which is to prohibit or prevent the business use to which the trial court has found it was being put prior to the enactment of Ordinance No. 227, or to prevent the continuance of any other nonconforming use which had become established therein before the time of such enactment.

■ Exemptions of existing nonconforming uses have been generally held to be valid and necessary. (*Jones* v. *City of Los Angeles,* 211 Cal. 304 [295 Pac. 14]; *Zahn* v. *Board of Public Works,* 195 Cal. 497 [234 Pac. 388].) In *Jones* v. *City of Los Angeles,* the Supreme Court in the course of a very complete discussion of the question of retroactive operation of zoning ordinances, spoke as follows (p. 310):

"As a matter of practice, also, those who have drafted ordinances have usually proceeded with due regard for valuable, vested property interests, and have permitted

existing, nonconforming uses to remain. They are very generally agreed that the destruction of an existing nonconforming use would be a dangerous innovation of doubtful constitutionality, and that a retroactive provision might jeopardize the entire ordinance. 'Zoning . . . holds that an ounce of prevention is worth a pound of cure and that it is fairer to all concerned to prevent the establishment in residence districts of objectionable businesses than to drive them out once they were established. . . . *Zoning looks to the future, not the past,* and it is customary to allow buildings and businesses already in the district to remain, although of a class which cannot be established. If such a business constitutes a nuisance, it can still be removed under the police power, but the zoning acts in themselves do not customarily interfere with existing conditions.' (Chamberlain and Pierson, Zoning Laws and Ordinances, 10 Am. Bar Assn. J. 185.) 'Retroactive operation of the provisions of the ordinance is generally avoided. . . . ' (Bettman, Constitutionality of Zoning, 37 Harv. L. Rev. 834, 853.) 'Retroactive zoning is not to be recommended. . . . ' (Young, City Planning and Restrictions on the Use of Property, 9 Minn. L. Rev. 593, 628.) 'The purpose of zoning, which is said to be the crystallization of present conditions and the constructive control of future development, does not require that existing uses be changed. Hence it has been generally assumed that any attempt to make zoning ordinances retroactive would meet with the opposition of the courts and might result in their declaring the ordinance as a whole unconstitutional.' (Retroactive Zoning Ordinances, 39 Yale L. J. 735, 737.) 'Nonconforming uses may be required to be removed, but the majority of the cases seem to indicate that if this procedure is attempted the ordinance will be declared unconstitutional because unreasonable.' (Byrne, The Constitutionality of a General Zoning Ordinance, 11 Marquette L. Rev. 189, 214.) '' (Italics ours.) (See *Ryan* v. *Andriano,* 91 Cal. App. 136 [266 Pac. 831].)

█ In the absence of clear and unequivocal language manifesting an intention that an ordinance shall have a retroactive operation, such operation will not be presumed. (*London* v. *Robinson,* 94 Cal. App. 774 [271 Pac. 921].)

The provisions of Ordinance No. 227 as to the continuance of nonconforming uses support the conclusion that the respondents are not authorized to prosecute appellant for alleged violations of the ordinances of the City of Burlingame herein cited or to otherwise attempt to enforce the provisions of those ordinances so far as they relate to the carrying on of a business established before the enactment of Ordinance No. 227, and that appellant is entitled to an injunction restraining the defendants and respondents from instituting any action by which it may be sought to prevent appellant from carrying on the business which he was carrying on or which had been established at the time of the enactment of Ordinance No. 227, and also restraining the defendants from instituting any criminal action in prosecution of plaintiff for acts arising out of the conduct of such business, such injunction being limited, however, to any business actually carried on or established at a time immediately prior to the enactment of Ordinance No. 227.

■ Appellant also asks for the judgment of the court that Ordinance No. 227 is void. While ordinances undertaking to regulate useful business enterprises are subject to investigation in the courts, with a view to determining whether the ordinance is a lawful exercise of the police power or an arbitrary interference with the right to carry on a lawful business, to make contracts, or to use and enjoy property (*Del Fanta* v. *Sherman,* 107 Cal. App. 746 [290 Pac. 1087] ; *Hurst* v. *City of Burlingame, supra*), courts are slow to exercise this power of investigation and to substitute their judgment for that of the municipal authorities in whom the determination of the character of the property to be included in the various zones is primarily placed. (*Feraut* v. *City of Sacramento,* 204 Cal. 687 [269 Pac. 537] ; *Miller* v. *Board of Public Works, supra.*) ■ Whenever a given situation presents a proper field for the exercise of the police power, the extent of its invocation and application is a matter which lies very largely in legislative discretion and every intendment is to be made in favor of a zoning ordinance. (*Zahn* v. *Board of Public Works, supra.*) In *Jones* v. *City of Los Angeles, supra,* at page 309, the court said: "An appellate court should not permit itself to be drawn into a minute examination

of alleged discriminatory operation of such ordinances if, broadly considered, a reasonable basis of classification exists.'' ■ Where a city adopts a general zoning ordinance, the fact that certain property is included in one classification while property situated directly across the street is included in another classification does not render the ordinance illegal. (*Feraut* v. *City of Sacramento, supra.*) The property involved in the case of *Hurst* v. *City of Burlingame, supra,* is located about one and one-half blocks in a northerly direction from appellant's property. The Hurst property is closer to the railroad and situated somewhat differently in point of proximity to other industrial properties which almost surround it. We are not prepared to say that the city council of the respondent municipality abused its discretion in placing the property of appellant in a residential district. We are of the opinion that the appellant is not entitled to a decree declaring Ordinance No. 227 void in so far as it prevents the use of appellant's property for commercial purposes, except to the extent hereinbefore expressed.

■ The objection has been made by appellant that Ordinance No. 227 is invalid for the reason that a planning commission existed in the City of Burlingame, and that the city council did not follow the provisions of section 4 of the Zoning Act of 1917, providing the mode of procedure in municipalities having a city planning commission. It appears that no ordinance was passed by the city council creating a planning commission as required by law. It does appear, however, that the city council acted in accordance with the provisions of section 5 of the same act, which provides in substance that in municipalities where there is no city planning commission, the council may proceed in the manner prescribed in section 4 of the act, and make the reports and perform other acts prescribed in section 4. We find no merit, therefore, in the objection, or in the objection that the court omitted to find upon material issues. In view of the conclusion which we have already expressed, we consider it unnecessary to discuss the last-mentioned objection.

It is ordered that the judgment be reversed, and that the cause be remanded to the trial court with directions to

enter its judgment in conformity with the conclusions herein set forth.

Knight, Acting P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 25, 1932, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 22, 1932.