[L. A. No. 16619.   In Bank.—July 30, 1941.]

IVAN R. ACKER, Respondent, v. R. O. BALDWIN et al., Appellants.

Everett W. Mattoon and J. H. O'Connor, County Counsel, and Beach Vasey and Edward H. Gaylord, Deputy County Counsel, for Appellants.

Sparling & Teel and Courtney A. Teel for Respondent.

EDMONDS, J.—In an action for declaratory relief brought by the respondent, the trial court determined that a zoning ordinance enacted by the county of Los Angeles was unconstitutional. As a part of the decree, the court enjoined the appellants, all of whom are officers of the county, from enforcing it.

The ordinance (No. 1813 N. S.), adopted in 1930, zoned an unincorporated area, which included the town of Temple City, for specified uses. The respondent is the owner of a house and lot situated within the territory described in the ordinance as Zone R–1. Within this zone, the ordinance provides, ''No building, structure, improvement or premises shall be used, and no building, structure or improvement shall be erected, constructed, established, altered or enlarged . . . which is designated, arranged or intended to be occupied or

used for any purpose other than a single family residence, together with the outbuildings necessary to such use located on the same lot or parcel of land, including a private garage with a capacity not to exceed three cars.''

The findings of fact recite that at the time the decree was made the respondent was a contracting and jobbing plumber conducting his business from his residence in Temple City; that this property was acquired by him after the ordinance was enacted and it is located within Zone R–1; ''that Temple City, which notwithstanding its name is an unincorporated territory, was founded with the intention that its inhabitants would use their residence properties for some light commercial purposes which would enable them to make a living; that chicken raising on a commercial scale has been and is the most extensive of these light, commercial home industries but throughout the residence district in Temple City there have been and are scattered real estate offices, stone masons' headquarters, cement contractors' offices, and the like; that this was the state of affairs when the zoning ordinance was passed; the court finds that this zoning ordinance is unreasonable because it attempts to make a strictly residential district out of a district where home industries have always been conducted; that said ordinance purports to prevent the living upon and use of said property for any purpose other than a single family residence and to prevent the living upon and the conduct of any business from and upon said premises; that said premises are in a sparsely built up community without the corporate limits of any municipality and in the unincorporated section of Los Angeles County; that said section is in the center of a poultry, truck gardening and fruit growing community wherein and whereat all residents, without substantial exception, are poor people who at least must of necessity and do get their living or a large portion thereof from the use of the said property otherwise than in a strictly residential capacity; that much of the property in said restricted and zoned district has, for a long time, and prior to the enactment of said ordinance been and now is, used for residential and business purposes; that said property is closely surrounded by numerous properties so used for residential and business purposes and is near and in close proximity to railroads and railroad yards and other business areas; that plaintiff has long used his property as hereinbefore alleged; that

the use of said property by plaintiff, or by the numerous others using their properties for residential and business purposes, has, in nowise, reasonably or otherwise impaired or injuriously affected the public health, safety, morals or general welfare of the community of Temple City, or any other community or section of Los Angeles County; that the said Zoning Ordinance is not reasonably or at all necessary to said public health, safety, morals and general welfare, and that the enforcement of said Ordinance, as valid, will jeopardize and deprive the plaintiff of his rights to the free use and enjoyment of his said property as guaranteed by the Federal and State Constitutions.''

The principal contention of the appellants is that the evidence does not support these findings and that, in pursuance of a general zoning plan, a legislative body may restrict the use of certain areas for residential purposes. The respondent asserts that the use which he has made of his property is among those intended by the founders of the zoned area, taking the district as a whole, and that the zoning regulations, if enforceable, will result in the taking of his property in violation of the constitutional guarantees.

It is now settled beyond question that although a court may differ from the determination of the legislative body, unless a zoning measure is clearly oppressive, it will be deemed to be within the purview of the police power. There will always be difference of opinion as to the means of accomplishing a particular end, but if there is a reasonable basis for the belief that the establishment of a strictly residential district has substantial relation to the public health, safety, morals or general welfare, a zoning ordinance to accomplish that purpose will be upheld. (*Miller* v. *Board of Public Works,* 195 Cal. 477 [234 Pac. 381, 38 A. L. R. 1479]; *Zahn* v. *Board of Public Works,* 195 Cal. 497 [234 Pac. 388].)

In earlier times, zoning regulations were, in the main, enacted to restrict the use of property in districts already partially, or somewhat completely, built up. With the growth of the large cities as the result of motor transportation, governmental authorities have endeavored to set aside areas for residential purposes in advance of their use. Certainly, it is more in the interest of the general welfare that certain districts be set aside to residential uses before there has been any large investment for improvements than to apply restrictions after business has become established. This is wise city plan-

ning in the public interest. It has been made possible by general judicial approval of the doctrine that zoning may properly take into consideration those factors which, although they may not be exactly defined as relating to public health, safety or morals, come under the broad term of general welfare.

Also, a zoning plan must be viewed as a whole and the court will not search out individual cases of discrimination or hardship. Moreover, it is not necessary, in order to sustain such legislation, to show that the public welfare demands the exclusion of business uses for each individual lot in the area zoned. (*Rehfeld* v. *San Francisco,* 218 Cal. 83 [21 Pac. (2d) 419] ; *Jones* v. *City of Los Angeles,* 211 Cal. 304 at 309 [295 Pac. 14].)

Considering the findings, it is not made clear by them what the intention of the "founders" of Temple City was or how it may now be ascertained. In any event, such intention is immaterial, for the police power is not subject to the mental state of realtors who lay out a subdivision. Nor may the police power be limited by private contract. Thus it has been held that a city and county may not be estopped by its conduct from requiring the removal of a cemetery, estoppel being no stronger than a contract entered into by the sovereign. (*Laurel Hill Cemetery* v. *City and County of San Francisco,* 152 Cal. 464 [93 Pac. 70, 14 Ann. Cas. 1080, 27 L. R. A. (N. S.) 260].)

Concerning the next finding, chicken raising and "commercial home industries" are probably carried on in most large areas adjacent to cities. There are usually "scattered" real estate offices in such districts but there is no finding that these uses surround the respondent's property or are even near it. And the existence of non-conforming uses does not invalidate a zoning ordinance.

The finding "that much of the property in said restricted and zoned district has, for a long time, and prior to the enactment of said ordinance been and now is, used for residential and business purposes" is so ambiguous and general as to be utterly meaningless. What is meant by "much"? The court did not state the number, nature or extent of the industrial or commercial uses in the district, nor their proximity to the respondent's property. A large part of the land in any district which is zoned is ordi-

narily used for residential and business purposes. That situation does not forbid zoning.

These findings were made upon evidence which shows, without conflict, that the total area zoned is 2496 acres, approximately four square miles. In general, the community consists of a commercial district running along a main street immediately surrounded by property chiefly given over to residential uses in the next few blocks, with agricultural pursuits surrounding that area. Like practically every other community, these uses sometimes merge near the boundaries, but the lines of demarcation in Temple City are more sharply drawn than in many other districts where zoning legislation has been upheld. There is a single track passenger line of the Pacific Electric Railway on the main street, Las Tunas Boulevard, and a branch line of the Southern Pacific Railroad over a mile away from the respondent's property. No other land within the district zoned is used for railroad purposes. Under the zoning ordinance adopted by the board of supervisors, sixty-seven (67%) per cent of the area was devoted to single family residences, twenty-six (26%) per cent to multiple family dwellings, and the remainder, seven (7%) per cent to commercial uses.

The finding that the respondent has long used his property for a commercial purpose is immaterial because that use commenced subsequent to the enactment of the zoning ordinance. No vested right to violate an ordinance may be acquired by continued violations. Also, the court's finding that the use of property by the respondent and others for business purposes, has, in nowise, reasonably or otherwise impaired or injuriously affected the public health, safety, morals, or general welfare will not sustain the judgment. Courts do not require that the proscribed use of each individual lot in an area zoned will have this effect if the zoning plan, as a whole, promotes these objectives of the police power. (*Rehfeld* v. *San Francisco, supra.*)

Unquestionably, in enacting the ordinance zoning Temple City, the purpose of the board of supervisors was to restrict a sparsely settled area near the rapidly growing city of Los Angeles for residential purposes. Zoning regulations look to the future, not to the past, and cannot be made retroactive. (*Jones* v. *City of Los Angeles, supra; Biscay* v. *City of Burlingame,* 127 Cal. App. 213 [15 Pac. (2d) 784].) There

was no attempt to interfere with any existing use. But, in effect, the legislative body declared that in the interests of the future development of the metropolitan area surrounding the city of Los Angeles, reasonable city planning required that this section be set aside for residential purposes. Of course, there would not be unanimous agreement among all citizens concerning the desirability of zoning that particular area. However, government cannot wait for unanimous approval of its purposes, nor do its enactments depend upon such approval for validity.

Also, the contention of the respondent that the area included within the terms of the ordinance is much less subject to zoning in connection with reasonable desires to preserve the health and welfare than communities of more pretentious character is one which has no place in a judicial proceeding. Considerations of private interest will usually be sufficient to convince one that regulation is much more desirable when applied to property belonging to another than to himself. ▮ Moreover, as has been pointed out before, the respondent bought the property upon which he lives and maintains his business after the ordinance was adopted; he is not in the position of one who finds that a present use of his land does not conform to the requirements of new legislation.

▮ When this case was before the District Court of Appeal the respondent moved to dismiss it upon the ground that the appeal presents only a moot question because of an amendment to the ordinance. According to an affidavit presented in support of the motion, the area of Zone R–1 as fixed by the amended ordinance is much less than that originally prescribed for it. However, the amendment did not change the classification of the respondent's property and, for that reason, the motion was properly denied.

The judgment is reversed.

Gibson, C. J., Curtis, J., Traynor, J., Moore, J., *pro tem.,* concurred.

SHENK, J., Dissenting.—In my opinion, the decision of this court on the former hearing (108 Pac. (2d) 899) correctly disposed of the appeal. The many cases there cited wherein zoning ordinances were held to be not in conformity with constitutional and statutory requirements

would seem to bring this case within the rule that the action of the local regulating body is not necessarily beyond judicial scrutiny and direction.

In the majority opinion great stress is laid upon the fact that the plaintiff acquired his property after the enactment of the zoning ordinance and therefore that he is not in position to resist its enforcement. But that fact is not controlling. The leading cases upholding the constitutionality of zoning ordinances in this state (*Miller* v. *Board of Public Works,* 195 Cal. 477 [234 Pac. 381, 38 A. L. R. 1479], and *Zahn* v. *Board of Public Works,* 195 Cal. 497 [234 Pac. 388]), were decided on February 27, 1925. Also on that day the case of *In re White,* 195 Cal. 516 [234 Pac. 396], was decided. Mr. Justice Lennon was the author of the three opinions. In the White case the petitioner was discharged from custody in a proceeding in *habeas corpus* wherein it appeared that the building constructed by him in defiance of the zoning ordinance was constructed after the enactment of the ordinance. Notwithstanding that fact, this court, having in mind the salutary effect of zoning regulations and upholding them when properly enacted, as in the two immediately prior cases, nevertheless set aside the ordinance of the city of Atherton in a proceeding where the ordinance was declared to be unreasonable and void on its face. In the present case we have the findings of the trial court after an extensive trial and view of the premises by the trial judge. The facts recited in the majority opinion are to my mind sufficient to support the findings and the conclusion that the ordinance under attack had no reasonable relation to the public health, safety, morals or general welfare.

Carter, J., concurred.

Respondent's petition for a rehearing was denied August 25, 1941. Shenk, J., Houser, J., and Carter, J., voted for a rehearing.