ELBANO L. GOWEN, and another, *vs.* CHARLES F. BESSEY.

### Waldo.     Opinion May 10, 1900.

*Burial. License. Evidence. Trespass.*

The holder of a lot in a cemetery belonging to a town, has a license, exclusive of any or every other person, to bury the dead thereon, and such license once acquired cannot be revoked so long as the cemetery is used as a place of sepulture.

The writing of the name of a person to whom a lot in such a cemetery has been assigned in the space designated as such lot upon a plan of the cemetery, is sufficient evidence of license, when such method of perpetuating title has been adopted by the town, or by its selectmen to whom the town has committed the assignment of lots.

When an inhabitant of a town has acquired a license to use a lot in a public cemetery for burial purposes, his removal from the town does not constitute a revocation of his license or an abandonment of his lot.

Trespass quare clausum is a proper action against one who enters upon and uses for burial purposes a lot in a cemetery which another has the exclusive right to use for such purpose.

ON REPORT.

The case is stated in the opinion.

*W. P. Thompson,* for plaintiffs.

*W. H. McLellan,* for defendant.

SITTING:   EMERY, HASKELL, WISWELL, SAVAGE, FOGLER, JJ.

FOGLER, J.   This is an action of trespass quare clausum. The locus is described as lot No. 165 in the New Cemetery, so called, in the town of Brooks.

In 1887, the town of Brooks, under a vote of the town, purchased a parcel of land as an addition to its cemetery, and had the land so purchased surveyed and divided into lots, the bounds of which were permanently marked, and caused a plan to be made upon which the lots were designated and numbered. By vote of the town non-residents were charged twenty dollars per lot. Lots were furnished to inhabitants of the town free of charge, though the town never so voted. Under a proper article in the warrant, the town voted that "the matter in regard to the new burying yard be left with the selectmen."

In the spring of 1888, the then selectmen, all being present, instructed the sexton, "to adopt that plan, residents to select the lots without pay and put it on the plan."

No person, resident or non-resident selecting a lot in the burying ground, has ever received a deed of the lot, or any certificate or writing in relation thereto, the only record thereof being the writing of the name of the person taking or selecting a lot, in the space upon the plan upon which the lot was designated by number.

In 1891 the plaintiffs, husband and wife, both then being inhabitants of the town, went into the burying ground and in the presence of the sexton, selected Lot No. 165, and inquired of the sexton as to the price, and were informed by him that residents could take up lots without pay. In answer to an inquiry about a deed, the sexton told the plaintiff that he could not give a deed but he would put it on his book and then have it put on the plan in ink, and that would be legal and would hold the lot, and that was the way they did with everyone.

The sexton inquired whose name should be put down as selecting the lot and Mrs. Gowen replied "E. L. Gowen," her husband, and the sexton wrote that name in his book and soon after had the name written on the space upon the plan designated as Lot 165.

In January, 1898, the defendant went to the burying ground in company with the sexton to procure a lot for the burial of his wife who had recently died, and selected Lot No. 165. The sexton informed him that the lot had been selected by Mrs. Gowen, and he could not give the defendant consent to take the lot unless the

selectmen gave permission.  The defendant, who was one of the selectmen, obtained verbal permission from the other selectmen to occupy the lot, and caused the remains of his deceased wife to be buried therein.  At the time of the decease and burial of the defendant's wife, the plaintiffs were not inhabitants of the town of Brooks.

The plaintiffs bring this suit against the defendant for entering said lot and burying the remains of his deceased wife therein.

Is the action maintainable?  We think it is.

The parcel of land of which Lot No. 165 was a subdivision, was dedicated by the town as a place of burial for the dead.  It subdivided the land so dedicated into lots to be assigned to its inhabitants and others for burial purposes.

The holder of a lot in a cemetery belonging to a municipality or religious society for burial purposes, whether his evidence of title be by deed, or certificate, or other means, does not acquire an absolute title to the land, but has the right, or license, exclusively of any and every other person to bury the dead upon the sub-divided plot assigned to him, and a license once acquired cannot be revoked so long as the ground continues to be used as a place of sepulture. 1 Kerr on Real Property, § 44; *Kincaid's Appeal*, 66 Penn. St. 411; *Windt* v. *German Reformed Church*, 4 Sandf. Ch. 471; *Sohier* v. *Trinity Church*, 109 Mass. 1–22; *Price* v. *Methodist Episcopal Church*, 4 Ohio, 515–539; *Craig* v. *First Presbyterian Church of Pittsburg*, 88 Penn. St. 42–51; *Smith* v. *Thompson*, 55 Md. 5; *Beatty* v. *Kurtz*, 2 Peters, 566.

In the present case the town did not provide for the execution and delivery of any deed or other writing to any person to whom a lot should be assigned, but the selectmen, to whom the matter was unreservedly submitted, by vote of the town, prescribed the manner or method which should be pursued in the assignment of lots. The method so prescribed was followed in the assignment of the lot selected by the plaintiffs, and the prescribed record was made to evidence or perpetuate the assignment.  We think the proceedings gave the plaintiffs a license to use the lot in question for burial purposes.  No lot holder in the cemetery has a different or better

title to his lot. The town by its long acquiescence in the methods adopted by the selectmen may be deemed to have ratified their form of procedure. Ordinarily no deed or writing is necessary to give a license to use land for a given purpose. A license may be implied by the acts of the parties.

The fact that the plaintiffs at the time when the cause of action accrued, were not inhabitants of the town of Brooks does not, in our opinion, affect their rights in the lot in question. The cemetery was not dedicated by the town to the exclusive use of the inhabitants, for by its vote non-residents could acquire the right to use lots for burial purposes. The plaintiffs' removal from the town is not sufficient evidence to prove an abandonment of the lot. They had on several occasions removed from the town as the employment of the husband made it necessary, and had, on each occasion, except in the case of their last removal, returned to the town. The town of Brooks was the early home of the wife and her father was still a resident of that town. In *Smith* v. *Thompson,* supra, the plaintiff was a member of an association having for its purpose the purchase and maintenance of a burying ground. A lot was assigned to him as such member. He subsequently withdrew from and ceased to be a member of the association. The court held that his withdrawal from the association was not an abandonment of the lot, and that he still had the exclusive right to use the lot as a place of sepulture.

The plaintiffs in the present case acquired and held an exclusive license, irrevocable, from the town, to occupy the lot in question for burial purposes so long as the cemetery should be used for a place of sepulture. The selectmen had no power to revoke the license so acquired and held, or to grant a similar license to the defendant. The defendant's entry upon the lot was unauthorized and constituted a wrong for which the plaintiffs have a remedy. An action of trespass quare clausum is a proper remedy. *Meagher* v. *Driscoll,* 99 Mass. 281; *Smith* v. *Thompson,* supra.

Defendant defaulted.