[S. F. No. 10200. In Bank.—April 27, 1923.]

WILLIAM B. HORNBLOWER, Plaintiff; F. E. ED-WARDS, Intervener and Appellant; MARTIN KELLY, Intervener, v. MASONIC CEMETERY ASSOCIATION OF THE CITY AND COUNTY OF SAN FRANCISCO (a Corporation), Respondent.

[1] CEMETERIES—RIGHTS OF PURCHASER OF CEMETERY LOT—DEFINITION AND CHARACTER OF.—The rights of a purchaser of a cemetery lot are as follows: "He becomes a member of the corporation; he gains the right to bury in the lot so long as burials are not prohibited by competent authority; and he also gains the right to maintain the bodies buried in the lot so long as no lawful authority enforces the removal of them"; and these rights constitute a right of property, cognizable at least in courts of equity, and entitled to protection from invasion whether it be by a mere trespasser or from the unauthorized and illegal acts of the directors of the corporation itself.

[2] ID.—INTEREST OF LOT OWNER—LICENSE—PRIVILEGE—RURAL CEMETERY ACT (STATS. 1859, P. 281).—The interest of an owner of a cemetery lot, conveyed by a cemetery association incorporated under the provisions of the Rural Cemetery Act (Stats. 1859, p. 281), by a grant, bargain, and sale deed, for a valuable consideration, purporting to convey the fee, with a habendum clause "unto the said party of the second part, his heirs and assigns

2.   Character of estate or property of owner in burial lot, notes, 67 L. R. A. 118; 3 L. R. A. (N. S.) 123; L. R. A. 1918A, 147.

forever, but to be held, owned, used and disposed of by said party of the second part, his heirs, executors, administrators or assigns subject to the provisions of section 11" of said act, and also subject to certain regulations dealing entirely with the management of the cemetery as such, is something more than a mere license or privilege revocable at the will of the association, because it was granted upon a valuable consideration and because it is expressly recognized by the law as a heritable right of property.

[3] ID.—PASSAGE OF MORRIS ACT (STATS. 1921, P. 199)—EQUITABLE RIGHT OF CEMETERY LOT OWNER—LEGISLATURE—POLICE POWER.— Prior to the passage of the Morris Act (Stats. 1921, p. 199), permitting certain cemetery associations to declare an abandonment of the whole or a part of their cemeteries and removal of the remains interred therein, an owner of a cemetery lot, conveyed by grant, bargain, and sale deed for a valuable consideration by a cemetery association incorporated under the Rural Cemetery Act (Stats. 1859, p. 281), to the grantee therein and to his heirs and assigns, to be owned, used, and disposed subject to the provisions of said act and regulations of the association, had a right, cognizable in equity, to the continued and undisturbed use of his cemetery lot, which the association was bound by its contract to respect; and undoubtedly the legislature had the power to terminate this right of such owner by the enactment of a statute in the proper exercise of its police power.

[4] ID.—POLICE POWER—LEGISLATURE.—The power to invade property rights exists only to the extent to which its exercise is reasonably necessary to protect the health, safety, or welfare of the people; the question whether or not such necessity exists is for the legislature, and its determination thereof is conclusive upon the courts if there is any basis in reason therefor.

[5] ID.—MORRIS ACT—INTERPRETATION OF.—The Morris Act (Stats. 1921, p. 199), is nothing more nor less than an enabling act; it neither commands nor prohibits, but provides, in effect, that the class of cemeteries therein mentioned may be either abandoned or continued at the discretion of their governing bodies, and it leaves that discretion uncontrolled and unguided, and it cannot have the effect of making the property right of a cemetery lot owner, resting in a contract executed upon a valuable consideration, subject to destruction at the will of others.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E. P. Shortall, Judge. Reversed.

The facts are stated in the opinion of the court.

Geo. Clark Sargent and Sumner Hurd for Appellant.

R. M. J. Armstrong and Charles L. Patton for Respondent.

Byron C. Parker and Thos. P. Wickes for Intervener Martin Kelly.

Francis J. Sullivan, Edgar D. Peixotto, James P. Langhorne, Harry S. Young and George Lull, *Amici Curiae.*

MYERS, J.—This is a suit to enjoin the respondent Cemetery Association from carrying out its announced intention to abandon its cemetery within the city and county of San Francisco, and to remove the bodies therefrom and reinter them in another cemetery in an adjoining county. The respondent Association was incorporated in 1864 under the provisions of the Rural Cemetery Act (Stats. 1859, p. 281). This act provides that any number of residents of the state, not less than seven, may form a cemetery association in the manner therein prescribed, enumerates the powers of such association, provides for the acquisition by it of the necessary lands and the platting and subdivision thereof into lots, for the sale and conveyance of such lots, for the annual election of trustees for the management and conduct of the business of the association, and that the proprietor or proprietors of any lot therein, not less than two hundred square feet in area, shall have one vote at such election; provides that the land and property of such association shall be exempt from all public taxes, rates, and assessments and shall not be liable to be sold on execution or to be applied in payment of debts due from any individual proprietor, and provides (section 11) that whenever a cemetery lot shall be transferred to individual holders, after there shall have been an interment therein such lot "shall be forever thereafter inalienable, and shall, upon the death of the holder or proprietor thereof, descend to the heirs at law of such holder or proprietor and to their heirs at law forever; provided, nevertheless, that any one or more of such heirs at law may release to any other of the said heirs at law his, her or their interest in the same, on such conditions as shall be agreed on and specified in such release. . . . "    In 1866 the

ancestor of intervener Edwards purchased from respondent a cemetery lot exceeding two hundred square feet in area for a valuable consideration, and received from respondent a deed of grant, bargain, and sale thereto, purporting to convey the fee, with a *habendum* clause ''unto the said party of the second part, his heirs and assigns forever, but to be held, owned, used and disposed of by said party of the second part, his heirs, executors, administrators or assigns subject to the provisions of section 11 [of the Rural Cemetery Act above referred to] and also subject to and in accordance with such rules, regulations and by-laws as are hereunto annexed and such as may be hereafter adopted by the trustees of said Cemetery Association for the management of said cemetery.'' The regulations attached to the deed and those thereafter adopted, so far as appears from the record, all deal entirely with the management of the cemetery as such. Several bodies have been interred in this lot and are still there, and the intervener Edwards is the sole descendant and sole heir of said original grantee. In 1900 the board of supervisors of the city and county of San Francisco passed an ordinance reciting that ''the burial of the dead within the City and County of San Francisco is dangerous to life and detrimental to health'' and forbidding the same from and after August 1, 1901. The validity of this ordinance has since been affirmed by this court (*Odd Fellows Cemetery Assn.* v. *San Francisco,* 140 Cal. 226 [73 Pac. 987]; *Laurel Hill Cemetery* v. *San Francisco,* 152 Cal. 464 [14 Ann. Cas. 1080, 21 L. R. A. (N. S.) 260, 93 Pac. 70]), and by the supreme court of the United States (*Laurel Hill Cemetery* v. *San Francisco,* 216 U. S. 358 [54 L. Ed. 515, 30 Sup. Ct. Rep. 301, see, also, Rose's U. S. Notes]). In 1904 the respondent elected to continue its existence under the provisions of the Civil Code, by unanimous vote of its trustees, in the manner prescribed in section 287 thereof. In December, 1912, by resolution of its board of trustees, ratified by a vote of the lot holders, at a meeting called for that purpose, it elected to continue its existence for a period of fifty years from and after the date of such extension, pursuant to the provisions of article XII, section 7, of the constitution. In 1921 the legislature passed a law, referred to by counsel, and to which we shall for convenience refer as the Morris Act (Stats. 1921, p. 199). It provides that any cemetery

association owning a cemetery within the boundaries of an incorporated city or city and county having a population not less than one hundred thousand, wherein burials shall have been prohibited for more than fifteen years, may, by resolution of its governing body, ratified by a majority vote of its lot owners as are entitled to vote at corporate elections, at a regular meeting or special meeting called for the purpose, declare for the abandonment of the whole or a part of the cemetery and for the removal of the remains interred therein to another cemetery without the boundaries of such city; provides for the fixing of a date for the removal of the remains, and the publication of a declaration of abandonment specifying such date, which shall be not less than ten months after the first publication; provides that after completion of the required publication the association shall have power to remove all remains and reinter them in such other cemetery or deposit them in a mausoleum or columbarium; specifies the manner of such removal; provides for the voluntary removal prior to such time by the lot owners; provides that if the improvements on the lot are not removed by the lot owners within a given time they may be removed and disposed of by the association, and no one shall thereafter be allowed to assert any claim or maintain any action with relation thereto; provides that whenever a cemetery or a portion thereof shall have been abandoned and the remains removed in the manner specified the land from which such remains have been removed may be sold by the cemetery corporation, or mortgaged or pledged as security for loans, without order of court, provided that such sales must be confirmed by the superior court; authorizes the association to employ any money in its treasury to defray the expenses of such removal and reinterment, and that the surplus funds thereafter remaining shall be devoted to the perpetual care of the places of reinterment. Pursuant to the provisions of this act the trustees of respondent adopted a resolution in August, 1921, for the abandonment of its cemetery and the removal of the remains therein, which was thereafter submitted to a meeting of the members and ratified by the vote of more than a majority thereof. This action was thereupon commenced to enjoin respondent from so proceeding. Appellant Edwards and others intervened therein, the case was submitted to the trial court for decision upon an agreed statement of facts,

judgment rendered for defendant, from which intervener Edwards prosecutes this appeal.

Respondent rests its right to proceed upon the provisions of the Morris Act. Appellant contends that if this act be construed as authorizing respondent to abandon its cemetery, remove the remains and sell the land without his consent, it must be held unconstitutional as impairing the obligation of a contract, depriving him of his property without compensation and without due process, and denying him the equal protection of the law. Appellant claims to be the owner in fee of his cemetery lot subject only to a limitation of the use thereof to burial purposes. He further claims that if the cemetery shall be lawfully abandoned he will thereupon own the absolute fee, freed from that limitation. Respondent contends that its deed to the cemetery lot, though in form a grant purporting to convey the fee, in legal effect passed no title or estate but merely a right to the exclusive use thereof for burial purposes; that the entire title and estate remains in it, subject only to this use; and that if the cemetery shall be lawfully abandoned appellant's rights therein will be thereby terminated and it will own the land freed from all claims of appellant. The question thus raised, of the nature and extent of the estate or interest conveyed by a deed of a cemetery lot, has never been passed upon in this state so far as we are advised. The decisions thereon in other states are many and various. The interest thus conveyed has been variously held to be "a fee with limited use," "a base fee," "a qualified fee," "an easement," "a license," "a qualified and usufructuary right," and "a privilege." The great majority of the cases, however, do agree in the conclusion that such a conveyance does not pass any title or estate, but merely an interest, and that the fee remains in the grantor, subject to the right of the grantee to the exclusive use thereof for burial purposes. It remains to consider the extent and the limitations of this right of the lot owner.

[1] Counsel for respondent define the rights of a purchaser of a cemetery lot as follows: "He becomes a member of the corporation; he gains the right to bury in the lot so long as burials are not prohibited by competent authority; and he also gains the right to maintain the bodies buried in the lot so long as no lawful authority enforces

the removal of them.'' This definition seems to accord, both with reason and with the preponderant authority, and for the purposes of this decision we shall accept it as correct. It matters not, for the purposes hereof, whether we denominate this right an easement, or a license, or a privilege. The cases all agree, either expressly or by implication, in recognizing it as a right of property, cognizable at least in courts of equity, and entitled to protection from invasion whether it be by a mere trespasser or from the unauthorized and illegal acts of the directors of the corporation itself. (See, for example, *Hertle* v. *Riddell*, 127 Ky. 623 [128 Am. St. Rep. 364, 15 L. R. A. (N. S.) 796, 106 S. W. 282]; *Brown* v. *Hill*, 284 Ill. 286 [119 N. E. 977]; *Anderson* v. *Acheson*, 132 Iowa, 744 [9 L. R. A. (N. S.) 217, 110 N. W. 335]; *Gowen* v. *Bessey*, 94 Me. 114 [46 Atl. 792]; note in 67 L. R. A. 118 et seq.) **[2]** The interest of appellant in the instant case must be something more than a mere license or privilege revocable at the will of respondent, because it was granted upon a valuable consideration and because it is expressly recognized by the law as a heritable right of property. In the case of *Chew* v. *First Presbyterian Church*, 237 Fed. 219, a great many of the decided cases were reviewed and the court there said: ''Language has been employed in some of the decisions touching the relations between cemetery companies or religious societies owning burying grounds, and persons holding burial lots therein, which if applied to this case would be palpably inaccurate and unsound. It has been said that such lot holders possess only a mere license or privilege to use and maintain their lots during the continuance of the cemetery or burial ground as such. But such a doctrine is wholly inapplicable to the relation between the corporation defendant and the holders of lots in its cemetery. They have much more than a mere license or privilege to use the lots appropriated or assigned to them. Were it otherwise their right to continue in the possession of burial lots would be revocable and determinable at any time at the whim or pleasure of the corporation defendant. A mere license or personal privilege to enter upon and occupy land is not only revocable and terminable at any moment, but is nonassignable and nondescendible. If not earlier ended it terminates with the death of the licensee.

In *De Haro* v. *United States*, 5 Wall. 599, 627 [18 L. Ed. 681, see, also, Rose's U. S. Notes], the court said:

" 'There is a clear distinction between the effect of a license to enter lands, uncoupled with an interest, and a grant. A grant passes some estate of greater or less degree, must be in writing, and is irrevocable, unless it contains words of revocation; whereas a license is a personal privilege, can be conferred by parol or in writing, conveys no estate or interest, and is revocable at the pleasure of the party making it. There are also other incidents attaching to a license. It is an authority to do a lawful act, which, without it, would be unlawful, and while it remains unrevoked is a justification for the acts which it authorizes to be done. It ceases with the death of either party, and cannot be transferred or alienated by the licensee, because it is a personal matter, and is limited to the original parties to it. A sale of the lands by the owner instantly works its revocation, and in no sense is it property descendible to heirs. Those are familiar and well-established principles of law, hardly requiring a citation of authorities for their vindication.'

"But if what would otherwise be a mere license has for its object the permanent occupation of land, and its accomplishment involves the expenditure by the person to whom granted of money upon or in connection with the land, and the circumstances attending and surrounding the grant clearly evince an understanding and intention by both parties that its operation shall be permanent and not confined to the lifetime of the person to whom granted, and money be expended accordingly, there is presented the case of a license so executed as to constitute in equity, if not at law, an irrevocable contract good as against the original parties and their heirs or successors."

That case is not directly in point here because the question of the effect of a statute such as the Morris Act was not there involved. It is cited rather for the clarity of its reasoning and its comprehensive investigation of the authorities.

[3] We conclude that prior to the passage of the Morris Act appellant had a right, cognizable in equity, to the continued and undisturbed use of his cemetery lot, which the respondent was bound by its contract to respect. Un-

doubtedly the legislature had the power to terminate this right of appellant's by the enactment of a statute in the proper exercise of its police power. If the legislature should find and determine that the continued maintenance of cemeteries in cities of the class described in the Morris Act will be dangerous or detrimental to the health of the citizens, it could compel the removal of the bodies and the abandonment of the cemeteries and thus terminate the right of the lot owners to their continued maintenance. [4] But the power to thus invade property rights exists only to the extent to which its exercise is reasonably necessary to protect the health, safety, or welfare of the people. The question whether or not such necessity exists is for the legislature, and its determination thereof is conclusive upon the courts if there is any basis in reason therefor. But it is clear that the legislature has not found or determined that the continued existence of these cemeteries in any way threatens or endangers the health or welfare of the people, because it has provided, in effect, that they may continue to be maintained without let or hindrance as long as their trustees desire to do so.

[5] The Morris Act is nothing more nor less than an enabling act. It neither commands nor prohibits, but provides, in effect, that these cemeteries may be either abandoned or continued at the discretion of their governing bodies, and it leaves that discretion uncontrolled and unguided. Its effect, as construed by respondent, would be to make the property right of appellant, resting in a contract executed upon a valuable consideration, subject to destruction at the will of others. This may not be done. (*Los Angeles* v. *Hollywood Cem. Assn.,* 124 Cal. 349 [71 Am. St. Rep. 75, 57 Pac. 153].)

The maintenance of a cemetery is a public use (Code Civ. Proc., sec. 1238, subd. 14), to which the land here in question has been dedicated. (Stats. 1854, p. 20, sec. 4; Code Civ. Proc., sec. 1963, subd. 38; Pol. Code, secs. 3105, 3109.) The state, therefore, has an interest in its maintenance, and the Morris Act should be considered as expressing the consent of the state to the abandonment of the public use, leaving the private rights and obligations as between the lot owners and the cemetery association unimpaired. The holding in *Stockton* v. *Weber,* 98 Cal. 433 [33

Pac. 332], that the legislature may enact a general law under which cemeteries may be lawfully abandoned and the bodies lawfully removed therefrom went no further than this. There were no contract rights of lot owners involved in that case, the burials having been made under a mere verbal license from the owner of the land without any contract. It is not practicable to discuss in detail the many cases from other states which have been cited in the briefs. Some of them are in conflict with the conclusions here expressed; others are distinguishable from the instant case, and others are in accord herewith. We are of the opinion that the learned trial judge erred in concluding that the Morris Act empowered the respondent to proceed in disregard of its contract obligations to the appellant. It is, therefore, unnecessary to consider the other points made by appellant in his briefs.

The judgment is reversed and the case remanded, with instructions to the trial court to enter its judgment upon the findings, enjoining the defendant from abandoning its said cemetery or from in any way interfering with the remains now buried in the lot of intervener against his will or consent.

Lawlor, J., Lennon, J., Waste, J., Kerrigan, J., Seawell, J., and Wilbur, C. J., concurred.