## GAMAGE et al. v. MASONIC CEMETERY ASS'N et al.

District Court, N. D. California, S. D. March 11, 1929.

No. 220–SK.

Aaron M. Sargent and George Clark Sargent, both of San Francisco, Cal., for plaintiffs.

Sullivan & Sullivan and Theo. J. Roche and W. W. Watson, all of San Francisco, Cal., for defendants.

KERRIGAN, District Judge. Sixteen lot holders in Masonic Cemetery have filed

this bill in equity, on behalf of themselves and others similarly situated, to enjoin the Masonic Cemetery Association and its directors from proceeding to disinter and remove bodies buried in the cemetery, and from abandoning the cemetery. The Masonic Cemetery Association and its directors are preparing to act under the mandate of an ordinance of the city and county of San Francisco (No. 8108 N. S.) approved July 9, 1929, the enactment of which ordinance was authorized by what is known as the "Morris Act of 1923." Stats. Cal. 1923, p. 646, c. 312. The material portions of the Morris Act provide:

"Section 1. The board of supervisors or other governing body of any incorporated city, or city and county of this state, having a population of more than one hundred thousand persons, shall have power to order the disinterment and removal of all human bodies interred in any cemetery of more than five acres in extent, or from any part thereof, situate within the limits of such city, or city and county, where the right of burial in such cemetery has been prohibited by law for a period of fifteen years or more, whenever such board of supervisors or other governing body shall, by ordinance, declare that the further maintenance of such cemetery or part thereof as a burial place for the human dead threatens or endangers the health, safety, comfort or welfare of the public and demands the disinterment and removal beyond the limits of the city, or city and county, of the human bodies interred therein."

The ordinance of the city and county of San Francisco, passed under authority of the Morris Act, in its first section practically follows the provisions of the section of the Morris Act just quoted. It reads as follows:

"Section 1. It is hereby declared that the Masonic Cemetery, hereinafter described, contains an area of more than five acres and is situate in a city and county having a population of more than 100,000 persons; that the right of burial in said cemetery has been prohibited by law for a period of more than 15 years, and that the further maintenance of said cemetery, as a burial place for the human dead, threatens and endangers the health, safety, comfort, and welfare of the public, and demands the disinterment and removal beyond the limits of the city and county of San Francisco of the human bodies interred therein."

It further provides that removals shall be begun in 10 months after passage of the ordinance and completed in 2 years, and that such removals shall be made in compliance with regulations to be made by the board of health within 60 days after passage of the ordinance.

There are four cemeteries, Masonic, Odd Fellows', Calvary, and Laurel Hill, clustered in the general area in which the Masonic Cemetery is located. Burials have been discontinued by law in all of them since the year 1900. All four lie within a space roughly measured as 14 city blocks by 12 city blocks. All stand in the way of normal city development, and all suffer from neglect and afford asylum for four-legged and two-legged vagrants. There is probably also some basis for a legislative determination that these cemeteries are dangerous to public health, as well as to safety and convenience. A similar ordinance to that affecting the Masonic Cemetery has been enacted, directing the removal of bodies from the Odd Fellows' Cemetery; but no action has been taken requiring disinterment of bodies from either Calvary or Laurel Hill Cemetery.

Cemeteries have long been recognized as subject to police regulation. Odd Fellows' Cemetery Ass'n v. San Francisco, 140 Cal. 226, 73 P. 987; Laurel Hill Cemetery v. City & County of San Francisco, 152 Cal. 464, 93 P. 70, 27 L. R. A. (N. S.) 260, 14 Ann. Cas. 1080. And the rights of lot holders in cemeteries are held subject to valid statutes and ordinances enacted in the exercise of police power. Sohier v. Trinity Church, 109 Mass. 1; Went v. Methodist Protestant Church, 80 Hun, 266, 267, 30 N. Y. S. 157, 159, affirmed 150 N. Y. 577, 44 N. E. 1129. This right of regulation extends, as shown by the cases last cited, to the right to direct the discontinuance of the cemetery and the removal of bodies therefrom. The exercise of the police power with regard to cemeteries is, however, subject to the usual constitutional limitations.

As was said in Chicago, B. & Q. R. Co. v. Illinois, 200 U. S. 561, 592, 26 S. Ct. 341, 350 (50 L. Ed. 596, 4 Ann. Cas. 1175): "The validity of a police regulation, whether established directly by the state or by some public body acting under its sanction, must depend upon the circumstances of each case and the character of the regulation, whether arbitrary or reasonable and whether really designed to accomplish a legitimate public purpose."

The Morris Act of 1923 may be assumed, for the purposes of this decision, on a motion for preliminary injunction, to be valid, as designed to accomplish a legitimate purpose and adopting a reasonable classification toward that end. It does not follow, however, that the ordinance enacted by the city

and county of San Francisco is free from objection. An enactment valid in its general scheme may be unconstitutional in its specific application. St. Louis, I. M. & S. R. Co. v. Wynne, 224 U. S. 354, 32 S. Ct. 493, 56 L. Ed. 799, 42 L. R. A. (N. S.) 102; Kansas City Southern R. Co. v. Anderson, 233 U.·S. 325, 34 S. Ct. 599, 58·L. Ed. 983; Nectow v. Cambridge, 277 U. S. 183, 48 S. Ct. 447, 72 L. Ed. 842.

The complaint herein alleges, and the affidavits submitted in support of the motion for a preliminary injunction show, that the Masonic Cemetery is similarly situated to at least two other cemeteries, which are permitted to continue in existence, while the Masonic and Odd Fellows' Cemeteries are ordered to remove interred bodies and cease to exist as cemeteries within the city and county. No reason appears in defendant's affidavits why two of the cemeteries should have been singled out and marked for removal, and two allowed to remain.

In spite of the deference with which a court will always regard a legislative determination of a classification such as this between the two groups of cemeteries, there must be some substantial basis for the distinction drawn. "While good faith and a knowledge of existing conditions on the part of a legislature is to be presumed, yet to carry that presumption to the extent of always holding that there must be some undisclosed and unknown reason for subjecting certain individuals or corporations to hostile and discriminating legislation is to make the protecting clauses of the Fourteenth Amendment a mere rope of sand, in no manner restraining state action." Gulf, C. & S. F.·R. Co. v. Ellis, 165 U. S. 150, 154, 17 S. Ct. 255, 256 (41 L. Ed. 666).

In this instance I am unable to find substantial reasons for the different treatment applied to the two groups of cemeteries similarly situated. Persons whose business or property is of such character that it is subject to police regulation have the right to demand that all persons similarly situated to themselves shall be treated alike, and that distinctions between classes shall only be made on a rational and not on an arbitrary basis. Yick Wo v. Hopkins, 118 U. S. 356, 6 S. Ct. 1064, 30 L. Ed. 220; Hines v. Clarendon Levee District (D. C.) 264 F. 127. It is true that, as between individuals, the fact that others are maintaining similar nuisances is no defense to an action to abate a nuisance; but this principle does not apply to legislation, which must conform to the requirement of equal protection of the laws. It is true that police regulations may permit the continued existence of established businesses in residential zones, where new ones are forbidden, or may forbid one owner of a partially destroyed wooden building in a fire district to repair it, virtually forcing him to tear it down and rebuild to conform to fire laws, while the owner of another wooden building untouched by fire may continue to maintain his structure.

Such measures may at first glance seem to burden one property owner or deny him a privilege, while others are permitted to do the acts forbidden to him. In such cases the act or ordinance in question is enacted in pursuance of a general scheme or plan, and bears evidence of legislative classification based on reason. ·It may be reasonable to exclude new businesses from a residence district and permit others to continue. There is a logical plan, tending to reduce fire hazards, in setting apart the owners of partially destroyed wooden buildings as the class forbidden to make repairs to perpetuate the danger, while the owners of sound buildings may maintain them. I am unable to find any such substantial distinction between the cemeteries affected by the city and county ordinances under the Morris Act and those permitted to continue. For the reasons above stated, plaintiffs have made a prima facie showing, entitling them to the preliminary injunction which they seek.

There is, however, a motion to dismiss, made by defendants, which must be granted, with leave to amend. The chief difficulty lies in the defective pleading of deraignment of plaintiffs' titles in all instances except that of Joseph W. Welch, Jr., who is an original grantee from the defendant association. The defect was virtually conceded on behalf of plaintiffs at the time of argument, and leave to amend was requested.

Defendant also urges that the jurisdictional amount does not appear. I am satisfied that the jurisdictional amount is here involved, in view of the fact that not only do the aggregate interests of the plaintiffs make up the necessary amount, but the value of the cemetery, whose continued existence as a unit they seek to preserve, far exceeds this amount. Carpenter v. Knollwood Cemetery (D. C.) 198 F. 297; Chew v. First Presbyterian Church (D. C.) 237 F. 219, 240. The facts establishing the jurisdictional amount might be more satisfactorily set forth by pleading the value of the individual interests and of the cemetery as a whole, and counsel

are advised to consider the desirability of amending in this respect, in view of the fact that amendment must in any event be had.

█ The existence of a concurrent remedy in the state courts does not divest this court of jurisdiction, where the federal Constitution is involved. Home Telephone & Telegraph Co. v. Los Angeles, 227 U. S. 278, 33 S. Ct. 312, 57 L. Ed. 510. The presence of the federal question in this case is apparent from the face of the bill. Plaintiffs also show an interest sufficient to entitle them to equitable relief in the premises, and for the purposes of this action it is not necessary at the present stage of the case to determine the exact nature of that interest. Hornblower v. Masonic Cemetery Ass'n, 191 Cal. 83, 214 P. 978.

For the reasons above stated, the motion to dismiss will be granted, with leave to amend within 10 days and, after amendment, to renew the motion for preliminary injunction heretofore made. As I believe, under the showing here made, that plaintiffs will be entitled to such preliminary injunction, defendants are directed to preserve the status quo pending the amendment of the bill.